**Monica Thrower**,

        Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

        Defendant.

**Memorandum & Recommendation**

Plaintiff Monica Thrower instituted this action on July 2, 2015, to challenge the denial of her application for social security income. Thrower claims that Administrative Law Judge Robert J. Phares erred by failing to properly account for the vocationally-limiting effects of her migraine headaches in his residual functional capacity ("RFC") determination. Both Thrower and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E 25, 27.

After reviewing the parties' arguments, the court determines that ALJ Phares erred in his decision by failing to address in his RFC determination Thrower's migraine headaches and failing to explain his reasons for crediting some of the State agency consultants' findings and not others. Therefore, the undersigned magistrate judge recommends[1] that Thrower's Motion for Judgment on the Pleadings be granted, that Colvin's Motion for Judgment on the Pleadings be denied, and that the Commissioner's final decision be remanded for further consideration.

---

[1] The court has referred this matter to the undersigned magistrate judge for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

**I.     Background**

On September 19, 2011, Thrower protectively filed an application for supplemental security income on the basis of a disability that allegedly began on December 2, 2009. After her claim was denied at both the initial stage and upon reconsideration, Thrower appeared before ALJ Phares for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Phares determined that Thrower was not entitled to benefits because she was not disabled. Tr. at 24, D.E. 29.

ALJ Phares found that Thrower had the following severe impairments: pseudoseizures, migraine headaches, personality disorder, depression, anxiety disorder, and substance abuse. *Id.* at 18. ALJ Phares also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 20. ALJ Phares determined that Thrower had the RFC to perform medium work, except that she is to avoid exposure to unprotected heights or moving machinery; is restricted to performing unskilled jobs that involve simple, routine, repetitive tasks; unable to perform high stress work that involves assembly line pace or that requires production quotas; and is restricted to jobs that have only occasional interaction with coworkers or the general public. *Id.* at 21. ALJ Phares also concluded that Thrower was unable to perform any past relevant work but that, considering her age, education, work experience and RFC, there were other jobs that existed in the national economy that she was capable of performing. *Id.* at 22–23. These included: laundry worker, hand packager, and goods layer. *Id.* at 23. Thus, ALJ Phares found that Thrower was not disabled. *Id*. at 24.

After unsuccessfully seeking review by the Appeals Council, Thrower commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on July 2, 2015. D.E. 6.

**II.     Analysis**

   **A.     Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

   **B.     Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650, 653 & n.1 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step

five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

## C. Medical Background

Thrower has a number of ailments, including migraine headaches.[2] In 2011, Thrower sought treatment from the Neurology & Pain Management Center ("NPMC") for her migraine headaches. Tr. 78, D.E. 31. NPMC gave her injections for migraine headaches four times that year. *Id.* at 78–80, 81–82, 84–86, 87–89. One of her migraine headaches was accompanied by nausea, lasted four days, and was a ten out of ten on the pain scale. *Id.* at 81. She also went to the Betsy Johnson Regional Hospital emergency room for treatment of a migraine headache and received injections. Tr. 97, D.E. 30.

From February 2012 to April 2012, Thrower experienced six migraine headaches requiring treatment. Tr. 2, 5, 7, 9, 11, D.E. 31. One of her migraine headaches required her to seek care from the emergency room (*id.* at 11); two were accompanied by photophobia, phonophobia, nausea, and vomiting (*id.* at 2, 7); two were moderate in severity (*id.* at 7, 9); and one made her feel like she was dying with ten out of ten pain (*id.* at 2). She was given injections for each. *Id.* at 3, 6, 8, 10, 11–12.

In May 2012, Thrower was admitted to Betsy Johnson Regional Hospital with a headache, neck pain, low-grade fever, nausea, and vomiting, suggestive of meningitis. Tr. 204, D.E. 30. Doctors determined that Thrower's neck pain was caused by a cervical epidural steroid

---

[2] Because Thrower only challenges ALJ Phares's treatment of the effects of her migraine headaches, the court will focus its recitation of her medical background on her history of migraine headaches.

4

injection, which she had recently received for her interval headaches, nausea, and vomiting. *Id.* at 204, 206. Doctors obtained a computed tomography scan of Thrower's head, which was normal, and discharged her once she was feeling better. *Id.* at 204. Later that month, she sought treatment from Stacy Deese, ANP, at Raleigh Neurology Associates for her migraine headaches. *Id.* at 260. Thrower reported that she had "horrible" headaches that occurred two or three times a week, and that she would then have one week without headaches. *Id.* She stated that Treximet helped her, but she usually had to receive injections two to three times a month. *Id.*

From June 2012 to August 2012, Thrower received treatment for five migraine headaches. *Id.* at 250, 342, 346, 348, 251. Two of her migraine headaches lasted three days or longer (*id.* at 250, 348), and one was accompanied by nausea, photo sensitivity, and aversion to loud sounds (*id.* at 348). She received medication to treat three of her migraine headaches (*id.* at 252, 346, 352) and received injections for two of them (*id.* at 340, 344). At an August appointment with Deese, Thrower complained that her abortives did not work, that she was suffering from severe headaches four to five times per month, and that she experienced "little headaches" two to three days per week. *Id.* Deese opined that Thrower's "migraine seem[ed] to be driven by musculoskeletal tension and stress" and referred Thrower to physical therapy. *Id.* at 252. Deese also continued Thrower's migraine preventatives and provided Thrower with a steroid taper to end her migraine headache. *Id.*

From September 2012 to November 2012, Thrower received treatment for four migraine headaches. *Id.* at 247, 334, 337, 340. She received injections for three of them (*id.* at 336, 337, 340) and medication for one (*id.* at 247). One of her migraine headaches was accompanied by nausea, sensitivity to light, sensitivity to noise, sleep disturbances, visual disturbances, and vomiting (*id.* at 334), and another was accompanied by nausea, blurry vision, "dots" in her

5

vision, and photophobia (i*d.*at 247). At a November appointment, she stated that she experienced similar migraine headaches two to three times a week. *Id.*

In 2013, Thrower sought treatment four times for migraine headaches. *Id.* at 318, 325, 328; Tr. 116, D.E. 31. Two of her migraine headaches had seven out of ten pain and were accompanied by photophobia, phonophobia, and nausea. Tr. 325–27, 328–29, D.E. 30. She was given medication for one and injections for the other. *Id.* at 327, 330. In September, Thrower saw Deese for treatment. Tr. 116, D.E. 31. Thrower complained that she still experienced migraine headaches one to two times a month and that approximately one migraine headache a month required her to receive care from urgent care or the emergency room. *Id.* She stated that abortive therapy was not working well, but also said that her migraines had improved after her hysterectomy on January 18, 2013. *Id.*; Tr. 298, D.E. 30. Deese opined that Thrower's migraine headaches were not frequent enough to begin another preventative medication and gave Thrower samples of Repax and Cambia for abortive therapy. Tr. 118, D.E. 30. Deese also prescribed a rescue therapy consisting of Tradol injections, Benadryl, and Phenergan. *Id.*

### D. Residual Functional Capacity Determination

Thrower argues that ALJ Phares erred by failing to account for her migraine headaches accompanied by photophobia, phonophobia, nausea, and vomiting, and requiring her to receive in-office injections and lie down in his RFC determination. D.E. 26 at 7–8. She also asserts that ALJ Phares should have considered a closed period of disability. *Id.* at 8–9. Colvin contends that ALJ Phares did not commit reversible error and his decision should be affirmed. D.E. 28 at 6. After review, the court determines that ALJ Phares's RFC determination precludes meaningful review and should be remanded for further consideration.

If the claimant's impairment does not meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, App. 1, then the ALJ must calculate the claimant's RFC to determine whether she can perform her past work despite her impairments. The claimant's RFC is comprised of her impairments and any related symptoms that affect her abilities in a work setting. 20 C.F.R. § 404.1545(a)(1). When assessing the RFC, the ALJ considers physical abilities; mental abilities; other abilities affected by impairments, such as "impairment(s) which impose environmental restrictions;" and the total limiting effects of the impairments and any related symptoms. *Id.* § 404.1545(b)–(d). The ALJ considers all impairments, even those that are not severe, "and reviews 'all of the relevant medical and other evidence.'" *Bryant v. Colvin*, 571 F. App'x 186, 190 (4th Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)).

The ALJ has a duty of explanation that is satisfied by providing "findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also Wyatt v. Bowen*, 887 F.2d 1082 (Table), 1989 WL 117940, at *4 (4th Cir. 1989) (per curiam) (unpublished). Fourth Circuit precedent "makes it clear that it is not [the court's] role to speculate as to how the ALJ applied the law to [his] findings or to hypothesize the ALJ's justifications that would perhaps find support in the record. *Fox v. Colvin*, No. 14-2237, __ Fed. App'x __, 2015 WL 9204287, at *5 (4th Cir. Dec. 17, 2015). Unlike Colvin's assertions to the contrary, both non-examining State agency consultants found that Thrower's migraine headaches warranted environmental limitations that ALJ Phares did not impose: both found that Thrower should avoid concentrated exposure to noise and hazards (*id.* at 73–74, 94–95) and one found that she should avoid concentrated

7

exposure to vibrations (*id.* at 94–95).[3] ALJ Phares gave great weight to the non-examining State agency consultants' assessments, finding that they "were consistent with the overall medical evidence." *Id.* at 22. He then credited the limitations in their Mental RFC assessments, along with the limitation of avoiding hazards. *Id.* at 21–22. ALJ Phares, however, did not explain why he credited some of the State agency consultants' findings and not others. Specifically, he failed to address the findings of other environmental limitations: avoiding concentrated exposure to noise and vibrations.

Moreover, ALJ Phares failed to discuss the impact of Thrower's migraine headaches—a severe impairment (Tr. 18, D.E. 29)—on her RFC. In order for the ALJ to be required to discuss the impact of an impairment on a claimant's RFC, the claimant "must 'allege that an impairment creates a functional limitation or restriction, or for there to be record evidence of an impairment's functional limitations or restrictions.'" *Yurek v. Astrue*, No. 5:08-CV-500-FL, 2009 WL 2848859, at *8 (E.D.N.C. Sept. 2, 2009) (quoting *Kelly v. Asture*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *3 (E.D.N.C. May 12, 2009)). Although Thrower did not testify that her migraine headaches cause functional limitations or restrictions, the State agency consultants' findings of environmental limitations are record evidence of the migraine headaches' restrictions. In his RFC determination, ALJ Phares only briefly mentioned Thrower's migraine headaches— merely stating that she complained of migraine headaches at the hearing. Tr. 21, D.E. 29. These errors—failing to discuss Thrower's migraine headaches and failing to explain the reason for crediting some of the State agency consultants' findings and not others—"frustrate[] meaningful review" by the court and warrant remand. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (holding that "remand may be appropriate ... where an ALJ fails to assess a claimant's

---

[3] The court notes that the record includes two Physical RFC Assessments conducted by Dr. Margaret Parrish, both signed on the same date. Tr. 95, 114, D.E. 29.

capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam) (alteration in original and internal quotation marks omitted)); *see also Boyet v. Colvin*, No. 1:14CV762, 2016 WL 614708, at *6 (M.D.N.C.) (recommending remand when ALJ gave opinions of state agency consultants "great weight" but failed to explain his reason for not crediting "findings with respect to Plaintiff's mental limitations"). Upon remand, ALJ Phares should specifically address whether Thrower has any limitations caused by her migraine headaches and clarify his reasoning for crediting some of the State agency consultants' findings and not others. ALJ Phares should also specify whether Thrower's disability occurred during a closed period or whether it is on-going in nature.

## III. Conclusion

For the forgoing reasons, the court recommends that Thrower's Motion for Judgment on the Pleadings (D.E. 25) be granted, that Colvin's Motion for Judgment on the Pleadings (D.E. 27) be denied, and that the Commissioner's final decision be remanded.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. §

636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: June 23, 2016

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE